**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

MAYRA J. ROSARIO TORRES

    Plaintiff,

        v.                          CIVIL NO.: 18-1842 (MEL)

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**OPINION AND ORDER**

**I.    Procedural and Factual Background**

Pending before the court is Ms. Mayra J. Rosario Torres' ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 17. On March 25, 2013, Plaintiff filed an application for Social Security benefits alleging that she initially became unable to work due to disability on September 20, 2011 ("the onset date"). Tr. 15. Prior to the onset date, Plaintiff worked as a secretary. Tr. 28. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. Tr. 17. Plaintiff's disability claim was denied on March 5, 2014 and upon subsequent reconsideration. Tr. 34

Thereafter, Plaintiff requested a hearing which was held on September 12, 2016 before an Administrative Law Judge ("the ALJ"). Tr. 15, 29. On September 30, 2016, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 30. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review.

Tr. 9–11. Plaintiff filed a complaint on November 6, 2018. ECF No. 3. Both parties have filed

supporting memoranda. ECF Nos. 17, 22.

II.     **Legal Standard**

        **A. Standard of Review**

        Once the Commissioner has rendered a final determination on an application for

disability benefits, a district court "shall have power to enter, upon the pleadings and transcript

of the record, a judgment affirming, modifying, or reversing [that decision], with or without

remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to

determining whether the ALJ employed the proper legal standards and whether his factual

findings were founded upon sufficient evidence. Specifically, the court "must examine the record

and uphold a final decision of the Commissioner denying benefits, unless the decision is based

on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d

333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15,

16 (1st Cir. 1996) (per curiam)).

        Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by

substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere

scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg

v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640,

642 (4th Cir. 1966)).

        While the Commissioner's findings of fact are conclusive when they are supported by

substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying

the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B. Disability under the Social Security Act

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether

plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R.

§ 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step

two requires the ALJ to determine whether plaintiff has "a severe medically determinable

physical or mental impairment" or severe combination of impairments. 20 C.F.R.

§ 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's

impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found

to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether

plaintiff's impairment or impairments prevent him from doing the type of work he has done in

the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all the relevant evidence in

the case record to determine the most the individual can do in a work setting despite the

limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This

finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ

concludes that plaintiff's impairment or impairments prevent him from performing his past

relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether

plaintiff's RFC, combined with his age, education, and work experience, allows him to perform

any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the

ALJ determines that there is work in the national economy that plaintiff can perform, then

disability benefits are denied. 20 C.F.R. § 404.1520(g).

### C. The ALJ's Decision

In the case at hand, the ALJ found that Plaintiff met the insured status requirement of the Social Security Act through December 31, 2015. Tr. 17. At step one of the sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the onset date of September 20, 2011 through the date last insured. Tr. 17. At step two, the ALJ determined that Plaintiff had the severe impairment of "degenerative disk disease, osteoarthritis, and a major mood disorder." Tr. 17. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19. Next, the ALJ determined that during the relevant period: "[Plaintiff possessed] the residual functional capacity to perform light as defined in 20 CFR 404.1567(b) except that [s]he is limited to frequent climbing, balancing, stopping, kneeling, crawling and crouching. [Plaintiff] is also limited to simple work." Tr. 22. At step four, the ALJ determined that during the relevant period, Plaintiff was not capable of performing her past relevant work as a "secretary." Tr. 28. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience to a vocational expert. Tr. 29. The vocational expert testified that a hypothetical individual with a similar RFC would be able to perform the following representative occupations: surgical instrument inspector, mail clerk, and office helper. Tr. 29. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that she was not disabled. Tr. 29.

### III.   Legal Analysis

Plaintiff objects to the ALJ's denial of disability benefits arguing that the ALJ erred at two steps of the five-part evaluation process. First, Plaintiff argues that the ALJ erred at step

5

three by not using a medical opinion to conclude that the Plaintiff did not suffer from a listed

impairment. ECF No. 17 at 7. Second, Plaintiff argues that the ALJ's RFC determination was not

supported by substantial evidence, resulted from the ALJ analyzing raw data, and did not

properly contain a function-by-function assessment of Plaintiff's limitations. ECF No. 17 at 3–6.

## A.  The ALJ's Step Three Determination

At step three, the ALJ considered whether Plaintiff suffers from one of three listed

impairments: listing 1.02, 1.04, and 12.04. Plaintiff argues that at step three the ALJ's decision

contained an error of law and was not supported by substantial evidence because in concluding

that Defendant does not suffer from a listed impairment, "the ALJ did not use any medical

opinion from any source." ECF No. 17 at 7. Plaintiff argues that under the Hearing, Appeals, and

Litigation Law Manual (HALLEX), specifically HALLEX I-2-5-34, and under Social Security

Ruling (SSR) 96-6p, the ALJ must have obtained a medical opinion either through testimony or

interrogatories that Plaintiff did not meet an applicable medical listing.[1] ECF No. 17 at 7.

At step three, the claimant bears the burden of proving that his impairment or

combination of impairments meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix

1. See 20 C.F.R. § 404.1520(d); Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 793

(1st Cir. 1987) ("[t]he burden to demonstrate the existence of such a [listed] impairment rests

with the claimant."). To meet the criteria of a listing, the claimant's impairment must satisfy all

---

[1] SSR 96-6p has since been rescinded and replaced by SSR 17-2p, which became effective March 27, 2017. Because an SSR is intended to provide guidance on adjudication and is binding on the Social Security Administration the day it becomes effective, then the date of the ALJ's decision with relation to the effective date of a new SSR is the key to determine which SSR applies to our examination of the ALJ decision. See Tabeth S.B. v. Saul, 2019 WL 5866068, *2 (D. Me. Nov. 8, 2019) ("SSR 96-6p was superseded effective March 27, 2017, by Social Security Ruling 17-2p ("SSR 17-2p") . . . The ALJ issued the decision at issue on March 28, 2018, . . . well after SSR 96-6p was rescinded.); see also Coskery v. Berryhill, 892 F.3d 1, 5 (1st Cir. 2018) ("the text of the new SSR does appear to favor the SSA's view that it does not apply to ALJ rulings rendered prior to the SSR's effective date.") (dicta). Due to the fact that the ALJ decision in this case was issued on September 30, 2016—almost six months before SSR 96-6p was rescinded and replaced on March 27, 2017—the applicable SSR in this case is SSR 96-6p.

the duration and objective medical requirements. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); 20 C.F.R. § 404.1525(c)(3).

Social Security regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Medical opinions may come from both a Plaintiff's treating source as well as from "[s]tate agency medical and psychological consultants and other program physicians and psychologists[.]" 20 C.F.R. § 404.1527(a)(2); SSR 96-6p ("State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources[.]"). Nevertheless, although the ALJ is to "consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart . . . the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2).

Plaintiff does not specifically identify at what point or with regard to which listed impairment the ALJ failed to use a medical opinion. In the ALJ's decision analyzing listing 1.02 for major disfunction of a joint as well as listing 1.04 for back disorders, the ALJ cited to the findings of consultative physician Dr. Doris Esteras ("Dr. Esteras") to conclude that Plaintiff did not satisfy the criteria of a listing. Tr. 19–20, 498–505. Likewise, in analyzing whether Plaintiff's mental impairments met the criteria of 12.04, the ALJ cited the examination of Plaintiff by

psychological consultative examiner Dr. Yaritza M. Robledo ("Dr. Robledo"). Under the regulations, medical and psychological consultant examiners, Dr. Esteras and Dr. Robledo can appropriately provide an expert medical opinions, and their opinions were considered by the ALJ at step three of the evaluation process. SSR 96-6p.

Nevertheless, Plaintiff argues that the HALLEX requires that the ALJ have presented the medical expert opinions in testimony at the hearing or through written interrogatories. ECF No. 17 at 7. HALLEX I-2-5-34 does command that "[t]he ALJ must obtain an ME opinion, either in testimony at a hearing or in responses to written interrogatories . . . [when] The ALJ is considering finding that the claimant's impairment(s) medically equals a listing." HALLEX I-2-5-34(A)(1). However, upon a finding that the ALJ erred, the court will not reverse the error if it was "harmless," meaning that the ALJ's error would not have been outcome determinative. See Colón v. Saul, 463 F. Supp. 3d 66, 75 (D. Mass. 2020) (citing Pérez Torres v. Secretary of Health and Human Servs., 890 F.2d 1251, 1255 (1st Cir. 1989)).

"That the ALJ did not comply with the letter of HALLEX does not, however, require remand." Coppola v. Colvin, 2014 WL 677138, at *6 (D.N.H. Feb. 21, 2014). Because the First Circuit Court of Appeals has not resolved the issue concerning the binding force of the HALLEX over an ALJ, "[i]t is an open question in this circuit whether an ALJ's failure to comply with HALLEX can ever constitute reversible error." Id. (emphasis in original). Accordingly, courts in the First Circuit, and in other circuits, have come to different conclusions as to whether the HELLEX is binding authority on an ALJ. Id. (collecting cases); Green v. Astrue, 2013 WL 636962, at *10, n. 5 (D. Mass. Feb. 20, 2013) ("[HALLEX] is not a regulation. It has no legal force, and it does not bind the SSA. Rather, it is a 13–volume handbook for internal use by thousands of SSA employees . . .") (citing Schweiker v. Hansen, 450 U.S. 785, 789 (1981));

Mason v. Astrue, 2010 WL 1236305 (D. Mass. Mar. 5, 2010) ("HALLEX provisions . . . 'lack the force of law and create no judicially-enforceable rights.'" (citing Bordes v. Comm'r of Soc. Sec., 235 Fed. Appx. 853, 859 (3d Cir. 2007)); Lowry v. Barnhart, 329 F.3d 1019, 1024 (9th Cir. 2003) (Noting that with regard to "the Hearings, Appeals and Litigation Law Manual (HALLEX) and the Program Operations Manual System (POMS) . . . [w]e have previously considered both publications and concluded that neither imposes judicially enforceable duties."); but see Avery v. Sec'y of Health & Hum. Servs., 797 F.2d 19, 23–24 (1st Cir. 1986) (construing the POMS as binding and "committing the Secretary and superceding [sic] any inconsistent discussion and examples."). "Even those courts [which] conclude that an ALJ's failure to adhere to HALLEX can constitute reversible error have required a claimant to demonstrate that he or she suffered some prejudice from the ALJ's misstep before remanding." Coppola, 2014 WL 677138, at *6. For example, in Dawes v. Astrue, the court remanded the ALJ's decision when the ALJ did not abide by the requirement in the HALLEX that the ALJ grant a claimant a continuance to be represented by counsel at the hearing before the ALJ. Dawes v. Astrue, 2012 WL 1098449 (D. Me. Mar. 30, 2012), report and recommendation adopted, 2012 WL 1313483 (D. Me. Apr. 17, 2012).

Even if the ALJ committed some error by not having a medical expert testify at the hearing or provide their opinion through interrogatories, Plaintiff has not alleged or argued how she has been prejudiced by the decision of the ALJ to consider the opinion evidence in the record of Dr. Esteras and Dr. Robledo in lieu of either doctor testifying in person or responding to interrogatories. In this case, no discernible prejudice—as dire, for example as Plaintiff lacking counsel at the hearing—resulted from the ALJ's deviation from the HALLEX. Furthermore, the evidence in the record from Dr. Esteras and Dr. Robledo was enough to sustain the ALJ's burden

to show that his decision regarding Plaintiff's listed impairments was supported by substantial evidence, even without Dr. Esteras or Dr. Robledo testifying in person or providing written answers to interrogatories. Plaintiff does not argue that having the doctors' testimony at the hearing based on their consultative evaluations would have led to any different result at step three of the evaluation process. As such, any error by the ALJ at step three is harmless and does not warrant a remand in this case.

## B. The ALJ's RFC Determination

Plaintiff next contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not adequately analyze Plaintiff's functional limitations. ECF No. 17 at 4–6. Plaintiff also alleges that the ALJ erred by interpreting raw medical data in functional terms in his decision. ECF No. 17 at 3–4.

When formulating a claimant's RFC, the ALJ must base his determination on all relevant evidence, including a claimant's medical record, the medical opinions, and a claimant's descriptions of her limitations. 20 C.F.R. §§ 404.1545, 404.1546. A claimant's RFC is the most she can do despite limitations from her impairments. Id. The claimant bears the burden of providing evidence to establish how her impairments limit her RFC. 42 U.S.C. § 423(d)(5)(A); Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). Furthermore, as a lay person, "an ALJ is not qualified to interpret raw data in a medical record in functional terms." See Pérez, 958 F.2d at 446. "[T]he ALJ must measure the claimant's capabilities and 'to make that measurement, an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.'" See Manso-Pizarro, 76 F.3d at 17–18 (quoting Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 7 (1st Cir. 1991). "An ALJ cannot rely on raw medical data; rather, he must look to physician's opinions to translate

that evidence into functional terms." <u>Valentín-Rodríguez v. Comm'r of Soc. Sec.</u>, 2014 WL 2740410, at *7 (D.P.R. June 17, 2014). Accordingly, "where an ALJ reaches conclusions about claimant's physical exertional capacity without any assessment of residual functional capacity by a physician, the ALJ's conclusions are not supported by substantial evidence and it is necessary to remand for the taking of further functional evidence." <u>See</u> <u>Pérez</u>, 958 F.2d at 446.

### 1. The ALJ's Physical RFC Determination

In determining Plaintiff's physical RFC, the ALJ considered Plaintiff's subjective complaints, cited extensively to Plaintiff's medical record, and considered and weighed multiple medical opinions. Tr. 22–25. First, the ALJ considered Plaintiff's descriptions of her own condition and limitations, including that Plaintiff explained that she lives alone, holds a driver's license, can only sit for 30 minutes or stand for 30 minutes at a time, and that she is only able to lift less than a pound with her right hand and no weight at all with her left hand. Tr. 22. The Plaintiff also explained how she "stays at home lying down" and that she is helped around the house by her niece and her sister. Tr. 22. She asserts that she is able to wash dishes, bathe, and do light cooking. Tr. 22. Plaintiff also indicated that her primary care physician is Dr. Nilda Álvarez ("Dr. Álvarez") treats her on a monthly basis and that she was treated by rheumatologist Dr. Juan Rodríguez Rivera ("Dr. Rodríguez"), but no longer sees him because he stopped accepting her insurance plan. Tr. 22.

The ALJ considered the examinations and opinions of both of Plaintiff's treating physicians Dr. Álvarez and Dr. Rodríguez. Tr. 23. For cases filed before March 27, 2017, an ALJ is generally required to give an opinion from a treating source "controlling weight," as long as the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record." <u>Sutton v.</u>

Berryhill, 358 F. Supp. 3d 162, 168 (D. Mass. 2019) (citing 20 C.F.R. § 404.1527(c)(2) (internal

quotations omitted)). To give "controlling weight" means that the ALJ must deferentially adopt

the doctor's medical opinion as his own. SSR 96-2p, 1996 WL 374188 at *2 ("[W]hen all of the

factors are satisfied [to give controlling weight], the adjudicator must adopt a treating source's

medical opinion irrespective of any finding he or she would have made in the absence of the

medical opinion.").[2] In certain circumstances, an ALJ does not have to give a treating physician's

opinion controlling weight, particularly when the treating physician's opinion goes to the

ultimate issue of disability. Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st

Cir.1991) ("The law in this circuit does not require ALJs to give greater weight to the opinions of

treating physicians . . . The ALJ was not required to accept the conclusions of claimant's treating

physicians on the ultimate issue of disability."). Additionally, "the regulations allow the ALJ to

discount the weight given to a treating source opinion where it is inconsistent with other

substantial evidence in the record, including treatment notes and evaluations by examining and

non-examining physicians." Bourinot v. Colvin, 95 F. Supp. 3d 161, 175 (D. Mass. 2015).

When a treating source opinion is not given controlling weight, the ALJ must weigh the

opinion according to several factors, namely: (1) [T]he length of the treatment relationship and

the frequency of examination; the nature and extent of the treatment relationship; (2) the

evidence which supports the opinion; (3) the consistency of the opinion with the record as a

---

[2] The definition from SSR 96-2p regarding "controlling weight" was rescinded in 2017 alongside the "treating physician rule" under 20 C.F.R. § 404.1527. For cases filed after March 27, 2017, the Code of Federal Regulations has now created a new standard requiring that ALJs not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [plaintiff's] medical sources." 20 C.F.R. § 404.1520c. Instead, an ALJ must consider a series of five factors when considering medical opinions and prior administrative medical findings, the most important of which are "supportability" and "consistency." 20 C.F.R. § 404.1520c(b)(2); (c)(1)–(2) (the five factors being supportability, consistency, relationship with the plaintiff, specialization, and other factors). However, because Plaintiff filed his case on January 26, 2017, 20 C.F.R. § 404.1527 still applies and SSR 96-2p is instructive regarding the meaning of "controlling weight."

whole; (4) the medical source's specialty; and (5) other factors which tend to support or contradict the opinion. <u>Sutton</u>, 358 F. Supp. 3d at 168; 20 C.F.R. § 404.1527(f)(1). However, "[a]n ALJ need not expressly address each factor identified by the regulations but must provide 'good reasons' for the weight assigned" to the medical source. <u>Sutton</u>, 358 F. Supp. 3d at 168.

Dr. Álvarez is a "general medicine practitioner" who treated the Plaintiff since August 2, 2010, and who provided a "Medical Report (General)" on November 3, 2014. Tr. 23. The ALJ noted that Dr. Álvarez opined that Plaintiff was limited to lifting up to 10 pounds, was not able to carry any weight; could sit up to one hour at a time and stand for a total of one hour during an eight-hour workday. Tr. 23. Dr. Álvarez also indicated that Plaintiff could only engage in occasional manipulative activities with her right hand but never with her left hand; that Plaintiff could occasionally operate foot controls; and that she could never climb stairs, ramps, ladders or scaffolds, and occasionally balance, stoop, kneel crouch, or crawl. Tr. 23; 553–56. Additionally, Dr. Alverez determined that Plaintiff could not be exposed to unprotected heights, moving mechanical parts, or dust, odors, fumes, extreme cold, heat, or vibrations, but that she could occasionally operate a motor vehicle and experience humidity and wetness. Tr. 23–34; 556–57. Dr. Álvarez diagnosed Plaintiff with cervical degenerative discogenic disease, and a chronic recurrent depression and indicated that Plaintiff has presented a poor response to treatment. Tr. 23, 552–53. Finally, the ALJ asserts that Dr. Álvarez opined in her November 3, 2014 opinion that Plaintiff had been "less than sedentary" since April 13, 2019. Tr. 24, Tr. 549–565.

The ALJ explained that he gave Dr. Álvarez's opinion dated November 3, 2014 "little weight" because it was "contrary [to] the substantial evidence of her functional capacity" per the assessment done by Dr. Esteras, which was seven months after Plaintiff had allegedly become less then sedentary in April 2019. Tr. 24. Dr. Esteras was a consultative physician who

conducted an examination of Plaintiff on November 15, 2013—roughly seven months after Dr. Álvarez concluded that Plaintiff was less than sedentary. Tr. 24, 498. However, Dr. Esteras' examination did not include a full functional assessment of Plaintiff's limitations, and her findings regarding Plaintiff's limitations and their impact on Plaintiff's work performance would not be apparent even to a lay person. For example, the ALJ cites extensively to Dr. Esteras' raw medical findings, such as that Plaintiff's "[l]umbar extension-flexion was 15 to 45 degrees," her "Magnetic Resonance Imaging (MRI) tests in September 2008 evidenced mild degenerative changes in the cervical spine, very small disc protrusion at C6-C7, bulging annuli at C3-C4 and C5-C6, and low lying cerebellar tonsils" and concludes that such findings are contrary to Dr. Álvarez's findings and show "little in the way of limitations." Tr. 24, 499–501.

However, what effect many of these findings have in functional terms in Plaintiff's job performance are not apparent to a lay person, and the ALJ erred by trying to translate Dr. Esteras' raw assessments into functional terms. While it may be true that Dr. Esteras' finding that Plaintiff's muscle tone of 5/5 in both hands would indicate to a lay person that Plaintiff can lift more than one pound in each hand, the functional effect on job performance due to the assessments regarding, for example, that "[Plaintiff's] tendon reflexes were +2 in upper and lower extremities . . . Babinsky and cerebellar tests were all negative. Cervical Spurling test was negative, shoulder drop test was negative, impingement test was negative, and Phalen, Finkelsteins's lumbar nerve root compression, and straight leg raising tests were all negative" are not readily apparent to a lay person. Tr. 24. Furthermore, Dr. Esteras' diagnostic impression was not widely inconsistent with Dr. Álvarez's, as Dr. Esteras' concluded that Plaintiff suffers from "cervical myositis, fibromyalgia syndrome, spine and disc disease C4-C5, C5-C6 disc spur complex; crevicular radiculopathy at C6; lumbar spine osteoarthritis, and depression." Tr. 24,

14

501. The ALJ himself stated that Dr. Esteras "did not formulate a medical opinion." Tr. 24. Hence, because "an ALJ is not qualified to interpret raw data in a medical record in functional terms" the ALJ erred in attempting to translate Dr. Esteras' medical findings into functional terms when Dr. Esteras did not. See Pérez, 958 F.2d at 446.

The only portion of Dr. Esteras' assessment upon which the ALJ could properly rely consists of two pages to which the ALJ cites which indicate that Plaintiff is fully able to grip, grasp, pinch, tap her fingers, button a shirt, pick up a coin, and write and that Plaintiff has a normal gait without needing an assistive device. Tr. 24, 503–504. Nevertheless, merely because Plaintiff "does not use a walking assistive device" does not necessarily mean that Plaintiff can walk more than one hour at a time without interruption, and so is not necessarily inconsistent with the conclusions of Dr. Álvarez. Tr. 23, 24.

Despite the ALJ's error, a remand is not warranted. Although the ALJ erred in attempting to translate Dr. Esteras' findings into functional terms, the error was harmless because the ALJ's ultimate RFC determination is nevertheless supported by substantial evidence given that the ALJ also drew on the lack of consistency between Dr. Álvarez's opinion—Plaintiff's treating physician—and two agency consulting physicians whose findings were translated into functional terms and did not require the ALJ to interpret raw medical data. Valentín-Rodriguez, 2014 WL 2740410, at *7 ("Rather than rely on his own impression of plaintiff's health to make his determinations, the ALJ relied on the lack of consistency between the several agency medical experts and the singular treating physician and pointed to the ways in which the agency doctors came to different conclusions about the plaintiff's RFC than [the plaintiff's treating physician]."). State agency non-examining consultant Dr. Ramón A. Ruiz Alonso ("Dr. Ruíz"), after reviewing Plaintiff's record concluded that Plaintiff is limited to occasionally lifting and carrying 20

pounds and 10 pounds frequently. Tr. 24, 516-18. Dr. Ruíz also opined that Plaintiff is able to

stand and walk for six hours in an eight-hour workday and able to sit for six hours in an eight-

hour workday. Tr. 24, 516-18. Dr. Ruíz also concluded that Plaintiff is able to climb ramps,

stairs, ladders, ropes, and scaffolds frequently, and that Plaintiff is able to balance, stoop, kneel,

crouch, and crawl frequently. Tr. 517. The ALJ also noted Dr. Ruíz's conclusion that Plaintiff

has no manipulative limitations. Tr. 25, 517–18. In addition, the ALJ also cited the opinion of

state agency consultant physician Dr. Osvaldo Rivera ("Dr. Rivera"), who at the reconsideration

level concurred with the findings of Dr. Ruíz. Tr. 25, 535. Dr. Ruíz and Dr. Rivera concluded

that Plaintiff had maximum RFC of light work and proposed that Plaintiff be limited to simple

tasks or unskilled work. Tr. 521, 534. Dr. Rivera also concluded in his report dated July 3, 2014

that the evidence does not suggest that Plaintiff's condition is worsening. Tr. 535.

Finally, the ALJ also considered the opinion of "examining physician" Dr. Juan

Rodríguez Rivera ("Dr. Rodríguez Rivera"), who Plaintiff alleges also treated her until he

stopped accepting her insurance. Tr. 22. Dr. Rodríguez Rivera examined Plaintiff on October 20,

2015 and the ALJ noted Dr. Rodríguez Rivera's findings that Plaintiff suffered generalized joint

pain, "multiple trigger points of pain", and "variable stiffness". Tr. 23, 569. Dr. Rodríguez

Rivera did not provide detailed functional limitations but he made findings of stress pain in

Plaintiff's right shoulder, right knee and left wrist, and that Plaintiff was suffering decreased

spinal flexion, and decreased lateral bending and rotation. Tr. 23, 569. Dr. Rodríguez Rivera's

diagnostic impression of Plaintiff was rheumatism unspecified and moderate depressive disorder.

Tr. 23, 568. Nevertheless, the ALJ noted that Plaintiff's medical record did not indicate that she

continued treatment with a rheumatologist and her allegations that Dr. Rodríguez Rivera "did not

accept her health insurance do not justify her not seeking treatment with another specialist." Tr. 23.

### 2.   The ALJ's Mental RFC Determination

Turning to the ALJ's mental RFC determination, the ALJ cited to the expert opinion of Plaintiff's treating psychologist Dr. Ramón L. Ramos ("Dr. Ramos"), who diagnosed Plaintiff with "severe and recurrent major depression" and treated her with psychotherapy, prescribed Wellbutrin to Plaintiff, and conducted follow up examinations "every 1-2 months." Tr. 25; 121; 437. On May 22, 2013, Dr. Ramos opined that "at present, [plaintiff] is unable to work." Tr. 25; 121; 437. Ultimately, the ALJ gave little weight to Dr. Ramos' opinion, firstly because "the conclusion of disability is an issue reserved for the commissioner." Tr. 25. Furthermore, the ALJ noted that Dr. Ramos' treatment notes in 2012 and 2013 on pages 47 and 48 of the record are illegible and Dr. Ramos does not contain "a psychiatric report or treatment notes" or an "objective finding supporting the alleged level of limitations." Tr. 25; 121–22; 437–38. Additionally, the ALJ assigned Dr. Ramos' opinion little weight because it was inconsistent with the findings of consultant psychologist Dr. Yaritza M. Robledo ("Dr. Robledo") who described plaintiff "as mildly depressed and free of attention or concentration deficits." Tr. 25.

Dr. Robledo evaluated Plaintiff on August 2, 2013, and also contains a record of Plaintiff's subjective complaints, including that she complained of insomnia, depressed mood, frequent crying spells, and loss of interest in social activities. Tr. 25, 487. The ALJ, however, also noted that despite Plaintiff's complaints of having a "bad mood," she nevertheless had an "active social life" because she socialized on a weekly basis with family and with her "friends who come over and distract [her]." Tr. 27, 68. The ALJ also discounted Plaintiff's claim that she is not able to get along well with people in authority because she told Dr. Robledo that she had

17

"adequate previous relationships with co-workers and supervisors" in her past work. Tr. 27, 488. In Dr. Robledo's evaluation of Plaintiff, Dr. Robledo observed that Plaintiff arrived adequately dressed and clean in appearance, she cried during the interview and did not smile, although Dr. Robledo described her as calm and that her level of cooperation was limited. Tr. 26, 488. Dr. Robledo indicated that Plaintiff's speech was coherent, relevant, and logical and that she did not show a history of delusions, obsessions, compulsions, phobias, paranoia, or suicidal or homicidal tendencies. Tr. 26, 489. Dr. Robledo found that Plaintiff had a poor level of memory, but that Plaintiff had appropriate psychomotor activity, attention, and concentration. Tr. 26, 488–89. Dr. Robledo also opined that the Plaintiff had an average level of understanding and was able to sustain adequate social interactions with some difficulty in adapting to her circumstances. Tr. 26 at 491. Dr. Robledo diagnosed Plaintiff with "Major Depressive Disorder, Single Episode, Mild." Tr. 26, 491.

The ALJ gave Dr. Robledo's opinion "partial weight." Tr. 26. Particularly, the ALJ gave weight to Dr. Robledo's opinion because it "was based on a thorough mental evaluation" of the Plaintiff. Tr. 26. However, the ALJ erred in using the Plaintiff's GAF score of 60–65 to discount the opinion of Dr. Robledo. The ALJ wrote that Plaintiff's "reported GAF scores indicates [sic] mild to moderate symptoms (e.g. flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupation, or school functioning (e.g. few friends, conflicts with peers or co-workers)." Tr. 26. Since 2013, the GAF score is no longer used in the Diagnostic and Statistics Manual of Mental Disorders. Negrón v. Colvin, 2015 WL 1499144, at *4, n. 4 (D.P.R. Apr. 1, 2015); Hall v. Colvin, 18 F. Supp. 3d 144, 153 (D.R.I. 2014) (citing Am. Psychiatric Ass'n, Diagnostic and Stat. Manual of Mental Disorders DSM–5 16 (5th ed. 2013)). On July 22, 2013, the Social Security Administration published Administrative Memorandum

AM-13066 in order to guide adjudications on using GAF scores. Bourinot, 95 F. Supp. 3d at 178. This memorandum "indicates that the SSA will continue to receive and consider GAF scores just as it would other opinion evidence, but scores must have supporting evidence to be given significant weight." Id. (citing Kroh v. Colvin, 2014 WL 4384675, at *18 (M.D. Pa. Sept. 4, 2014)). Additionally, "[t]he Administrative Memorandum emphasizes that "GAF ratings are not standardized," explaining that "GAF is neither standardized nor based on normative data. . . . This limits direct comparability of GAF scores assigned by different evaluators. . . ." Hall v. Colvin, 18 F. Supp. 3d 144, 153 (D.R.I. 2014). As such, it is improper for an ALJ "to discredit medical evidence based on its assigned GAF score", particularly medical opinion evidence. Id. ("Consistent with the condemnation of the GAF system, and the recent Administrative Memorandum from the SSA, it was improper for the ALJ to discredit medical evidence based on its assigned GAF score. Specifically, the ALJ improperly dismissed Dr. Cox's opinion based on the GAF score of 40 . . . .").

Even so, as with the ALJ's physical RFC determination, any error was ultimately harmless because the ALJ considered other supporting evidence in the record, including other opinion evidence, when weighing Dr. Robledo's opinion and when formulating Plaintiff's mental RFC. As such, any error in citing the GAF score was not outcome determinative alone. In his decision, the ALJ also considered the opinions of state agency psychologists Dr. Luis Umpierre ("Dr. Umpierre") and Dr. Adalise Borges ("Dr. Borges"). Tr. 26. Dr. Umpierre concluded that the evidence in the record indicated that Plaintiff suffered from "medically determinable depression" and reported that Plaintiff's depression "impress[ed] as moderate." Tr. 26, 221. Dr. Umpierre also opined that Plaintiff "can interact with others in simple terms", and that Plaintiff continues to have adequate judgment, attention, and concentration, but that Plaintiff

has an affected mood and memory. Tr. 26, 221. Dr. Umpierre additionally concluded that

Plaintiff suffers from a depressive disorder which impairs her ability to deal with complex and

detailed tasks, but that, nevertheless, Plaintiff is able to learn, understand, remember, and execute

simple instructions. Tr. 26, 221. Dr. Borges concurred with Dr. Umpierre at the reconsideration

level. Tr. 26, 534. The ALJ accorded the opinions of Dr. Umpierre and Dr. Borges "partial

weight" and concluded that they were consistent with the findings of Dr. Robledo. Tr. 26.

      In sum, in making Plaintiff's physical and mental RFC determination, the ALJ considered

Plaintiff's subjective complaints of her limitations, objective medical evidence, and examined

and weighed several expert opinions. Therefore, the ALJ's determination was supported by

substantial evidence in the record, and any errors regarding the evidence which the ALJ used to

formulate Plaintiff's RFC were harmless and do not warrant remand.

### 3.   Whether the ALJ's RFC Determination was Sufficiently Detailed

      Plaintiff nevertheless argues that the ALJ erred in not adequately developing a "function

by function assessment" of either the Plaintiff's physical or mental RFC by failing to discuss the

physical strength demands of "sitting, standing, walking, lifting, carrying, pushing and pulling"

or Plaintiff's mental work-related ability to "understand, carry out, and remember instructions;

use judgment in making work related decisions; respond appropriately to supervision, co-

workers and work situations; and deal with changes in a routine work setting." ECF No. 17 at 6.

SSR 96-8p requires that "[t]he RFC assessment must first identify the individual's functional

limitations or restrictions and assess his or her work-related abilities on a function-by-function

basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945.

Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light,

medium, heavy, and very heavy." SSR 96-8p. Paragraphs (b), (c), and (d) of 20 CFR 404.1545

and 20 CFR 416.945 outline the functional limitations regarding a plaintiff's "(b) Physical abilities", "(c) Mental abilities", and "(d) Other abilities affected by impairments." 20 CFR 404.1545(b)–(d); 20 CFR 416.945(b)–(d).

In determining a plaintiff's "physical abilities" an ALJ is to assess "the nature and extent of [a plaintiff's] physical limitations" to perform work activities "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)." 20 CFR 404.1545(b). In the ALJ's assessment of the nature and extent of a plaintiff's "mental abilities", the ALJ should consider a plaintiff's "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." 20 CFR 404.1545(c). Finally, with regard to "[s]ome medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities" the ALJ is to consider any resulting limitations when formulating the RFC. 20 CFR 404.1545(d). No such "other abilities affected by impairments" are at issue in this case.

However, "the specific functions listed in SSR 96–8p 'are only illustrative of the functions potentially relevant to an RFC assessment[.]'" Beaune v. Colvin, 2015 WL 4205251, at *3 (D.N.H. July 10, 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir.2013)). Therefore, "[a]lthough an ALJ should ideally address all of the functional limitations associated with a claimant's impairments in his RFC finding, courts have held that a failure to do so will not invalidate the decision if the functional limitations can be inferred from the record as a whole."

Beaune, 2015 WL 4205251, at *3. For example, citing its "sister Circuits" the Court of Appeals

for the Second Circuit has held,

> Where an ALJ's analysis at Step Four regarding a claimant's functional limitations
> and restrictions affords an adequate basis for meaningful judicial review, applies
> the proper legal standards, and is supported by substantial evidence such that
> additional analysis would be unnecessary or superfluous, we agree with our sister
> Circuits that remand is not necessary merely because an explicit function-by-
> function analysis was not performed."

Cichocki, 729 F.3d at 177 (citing Zatz v. Astrue, 346 Fed. Appx. 107, 111 (7th Cir.2009) ("[A]n

ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about

which there is no conflicting medical evidence."); Depover v. Barnhart, 349 F.3d 563, 567–68

(8th Cir. 2003) ( "[W]e believe that the ALJ implicitly found that Mr. Depover was not limited in

these functions, and in this instance we do not see any reason to remand to make the findings

explicit."); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ( "Preparing a function-by-

function analysis for medical conditions or impairments that the ALJ found neither credible nor

supported by the record is unnecessary."). Accordingly, and ALJ who "failed to touch all the

bases" nevertheless only commits harmless error if "the record demonstrates that he sufficiently

performed the function-by-function assessment required by SSR 96-8p." See Beaune, 2015 WL

4205251, at *5.

 Here, the ALJ's explicit function-by-function assessment is light on detail, explaining

only that,"[Plaintiff possessed] the residual functional capacity to perform light work as defined

in 20 CFR 404.1567(b) except that [s]he is limited to frequent climbing, balancing, stopping,

kneeling, crawling and crouching. [Plaintiff] is also limited to simple work." Tr. 22. However,

based on the above discussion of the substantial evidence supporting the ALJ's physical and

mental RFC determination, Plaintiff's functional limitations can be inferred from the record as a

whole and any failure by the ALJ to expressly discuss each work-related function was harmless error.

With regard to plaintiff's physical RFC, the ALJ specifically cited to the findings of state agency consultants Dr. Ruíz and Dr. Rivera, who did provide a function-by-function assessment indicating Plaintiff's abilities to sit, stand, walk, lift, carry, balance, stoop, kneel, crouch, and crawl, as well as Plaintiff's abilities to climb ramps, stairs, ladders, ropes, and scaffolds, and further indicated that Plaintiff exhibited no manipulative limitations. Tr. 24–25, 516-18. The ALJ's citation to this evidence in the record shows that the ALJ sufficiently performed the function-by-function assessment required by SSR 96-8p with regard to Plaintiff's physical limitations, and any failure to make an explicit restatement of such physical limitations was harmless error.

A similar conclusion follows with regard to the ALJ's determination of Plaintiff's mental RFC. The ALJ cited to several expert opinions which outlined Plaintiff's limitations in functional terms. The ALJ cited Dr. Robledo's findings that Plaintiff showed an average level of understanding and was capable of sustaining adequate social interactions but had poor memory. Tr. 26, 488–89, 491. The ALJ also referred to Dr. Umpierre's findings that Plaintiff is impaired in her ability to deal with complex and detailed tasks, but that Plaintiff is able to learn, understand, remember, and execute simple instructions. Tr. 26, 221. The ALJ also considered Dr. Robledo's findings that Plaintiff had "adequate previous relationships with co-workers and supervisors" in her past work. Tr. 27, 488. Accordingly, the ALJ also adequately considered the function-by-function assessment required by SSR 96-8p for Plaintiff's mental RFC determination, and the ALJ's failure to enter into further detail is therefore harmless error.

**IV.**   **Conclusion**

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 6th day of September, 2022.

s/Marcos E. López
U.S. Magistrate Judge